MYRICK *v.* STATE.

Division A. Dec. 3, 1951.

No. 38218 (55 So. (2d) 426)

James D. Hester, and **William S. Boyd, Jr.,** for appellant.

**Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**Kyle, J.**

The appellant, Lewis Myrick, was indicted by the grand jury of the Second Judicial District of Jones County on a charge of having willfully and feloniously deserted, neglected and refused to provide for the support and maintenance of his four minor children, under the ages of sixteen years, leaving them in destitute and necessitous circumstances. The indictment was returned at the February 1948 term of the court. The defendant was arraigned and entered a plea of not guilty on March 6, 1951, and was tried and convicted on March 14, 1951. He was sentenced to serve eighteen months in the state penitentiary, and from that judgment he prosecutes this appeal.

The testimony of the State witnesses showed that the defendant and his wife, Liddie Ruth Myrick, were married in 1942, and that the eldest of the four children was seven years of age at the time of the trial.

C. W. Gavin, the father of Mrs. Liddie Ruth Myrick, testified that the defendant and his wife lived in a house on a small tract of land owned by the defendant's father in Jasper County during the first part of 1946. There were three children at that time. The defendant had a job in Birmingham, Alabama. Gavin learned that the wife and children were in dire need and did not have sufficient food; and Gavin went to Jasper County and moved his daughter and the three children to his own home in Jones County. The fourth child was born sometime thereafter. Gavin testified that the mother and four children resided with him in his home for a period of four or five months, and that the defendant did not visit them during that time, and so far as he knew did not send them any money for their support or furnish

any clothing or food for them. Gavin stated further that so far as he knew the defendant furnished no support for the children from the time they were separated from him in 1946 until the indictment in this case was returned by the grand jury. In answer to a direct question, "How were they supported", the witness stated that they were supported largely by himself and "with help from neighbors, sympathetic neighbors, and some help from the Child Welfare." Gavin stated that at the time he moved his daughter and her children to his home, they were without groceries or anything to eat and did not have a sufficient amount of clothing, but that they were well cared for and well fed while they were in his home.

After remaining in her father's home for several months, Mrs. Myrick moved into another house on an adjoining farm in Jones County, which was owned by Glover Matthews. Matthews testified that Mrs. Myrick and the children moved into the house on his place in March, 1947, and lived there about a year; that they were in great need while they lived there, and that neighbors carried groceries to them, and that they received some help from the welfare department; that the defendant never visited them during that time so far as he knew. Al Scott, whose wife was related to the defendant, testified that he received information in 1947 that the defendant's wife and children were in destitute circumstances, and that he and his wife carried groceries to them on several occasions. Scott stated that he saw the defendant on the streets of Laurel during that time, and that the defendant was employed for a while as upholstery man at Riley's Automobile Body Shop.

The defendant's brother and his mother and father testified as witnesses for the defendant. The brother, J. D. Myrick testified that he visited in the home of the defendant about twice a month in 1946, and that the condition of the home in which they lived and their food and clothing were about as good as any ordinary family enjoyed; that the defendant's father moved his daughter

and her children to his home during the summer of 1946 while the defendant was in Birmingham; that the defendant was supporting his family at that time; and that the children appeared to be in good health. The witness stated that the defendant had carried groceries to his wife and children during the latter part of 1946 and during the year 1947, and that the defendant had sent $25 to his mother for his wife while he was in California. The defendant's mother stated that when the defendant and his family were living on his father's farm in 1946 the wife and children had plenty of vegetables and fruits and other things to eat, and that the children were healthy; that she and her husband told the defendant's wife that she had a home there as long as she wanted to stay there. The defendant's father corroborated the statements made by the defendant's mother.

Two or three other witnesses testified for the defendant as to minor details, and the defendant then testified in his own behalf. The defendant stated that he gave his wife no cause for leaving the home that he had provided for her and the children during the midsummer of 1946; that he brought food, clothing and money to them while he was working in Birmingham, and that they had the use of a good vegetable garden that belonged to his mother. On cross-examination the defendant admitted that he worked at Riley's Automobile Body Shop in Laurel during the fall of 1946, and made approximately $50 per week. He stated that he gave his wife during that time $10, $12, or $15 a week out of his earnings. He quit his job at the automobile body shop in December. His wife had him arrested and placed in jail in January, 1947, and he remained in jail five days. A few weeks later he went to California to get a job. He stated that he sent money home from California for the support of his children during the year 1947 but was unable to produce any receipts showing that he had done so.

The appellant's chief assignment of error on this appeal is that the court erred in refusing to grant the peremptory

instruction requested by the appellant directing the jury to find him not guilty. And two points are argued in support of this assignment, (1) that the State wholly failed to prove a desertion by the defendant, and (2) that the State failed to prove that the children were left in destitute and necessitous circumstances. Appellant says that, according to the State's own witness, the appellant's wife deserted him and took the children with her to her father's home in the midsummer of 1946 without any justifiable cause, and that according to all of the proof the children never lacked for food, clothing and the other necessities of life. We do not think that either of the two points argued in support of the above mentioned assignment of error is well taken.

In the case of Clark v. State, 181 Miss. 455, 180 So. 602, 603, this Court said: ''In order to establish the offense condemned by this statute, it is necessary for the State to allege and prove either a desertion on the part of a parent of such child or children, under the circumstances therein mentioned, or a willful neglect to provide for the support and maintenance of such child or children. Where the proof is sufficient, as in the case at bar, to show that there has been a willful neglect to provide such support and maintenance, it is not required that desertion be also shown, within the usual and ordinary meaning of that term.'' In the case of Horton v. State, 175 Miss. 687, 166 So. 753, 754, the Court said that the offense defined by the statute, Section 861, Code of 1930, is a continuing one, citing Abraham v. State, 30 Ga. App. 658, 118 S. E. 761; and that ''where the offense is continuous, the statute of limitations does not apply where some portion of the crime is within the period although another portion thereof is not.'' 16 C. J. 225; 22 C. J. S., Criminal Law, Sec. 226. And in the Horton case the Court held that the gist of the offense is the willful failure to provide for the support and maintenance of the children.

We think that the element of desertion charged in the indictment was sufficiently proved by the evidence of the State's witnesses. The defendant was not charged in the indictment with the desertion of his wife, or neglect or refusal to provide for her support and maintenance. But the charge alleged against him was that he had willfully and unlawfully deserted his four minor children and neglected and refused to provide for their support and maintenance. And even if the evidence tended to ·show, and we do not think that it does so, that the defendant's wife left the defendant's home in 1946 and moved herself and her children into her father's home without justifiable cause, such wrongful act on the part of the mother could not be imputed to the four small children, who were then too young to have any volition of their own, and such wrongful act on the part of the mother could not in any way relieve the defendant of his responsibility for caring for and supporting his said children. Desertion as an element in the crime charged in the indictment on which the defendant's conviction in this case rests is a willful forsaking and desertion of the duties of parenthood. Where minor children are involved there is a desertion when a father quits the society of his children and renounces the duties he owes them as a father.

The appellant's attorney in the argument made by him in his brief on the second point mentioned above earnestly insists that the State failed to meet the required burden of proof, in that the record fails to show that the children were in destitute or necessitous circumstances.

 This contention is based upon the fact that the State's witnesses testified that food, clothing and shelter were provided for appellant's children by their grandfather, and by neighbors and friends, who were willing to contribute groceries and other food supplies to relieve their distress, and by contributions made by the Children's Welfare Department.

The Supreme Court of Oklahoma, in discussing a similar argument made by the appellant's attorney in the case of Hunter v. State, 10 Okl. Cr. 119, 134 P. 1134, 1138, L. R. A., 1915A, 564, said: "If this contention were correct, it would engraft a new provision in the statute, and would make a parent's guilt depend, not upon his failure and neglect to provide for his child, but also the concurrent failure and neglect of other persons to do so. In other words, it matters not, though the parent may have done absolutely nothing toward the support of his child, if other persons, through kindness of heart, supplied the child with the necessaries of life, the parent could not be convicted. We cannot agree with counsel for [plaintiff in error] that the fact that the mother and the grandparents of the child were providing it with food and clothing constitutes any justification of the conduct of the [plaintiff in error]. Men cannot shift their burdens upon the shoulders of others in this way. The father, who has brought life into this world, must make a manly effort to support it, and if he does not do so he is guilty under the law."

In 39 Am. Jur., Parent and Child, par. 112, p. 775, it is said that, "The rule in the majority of jurisdictions, under statutes designed to protect children from the violation of parental obligations owed them, as distinguished from statutes designed merely to prevent the child from becoming a public burden, is that criminal liability for an act or omission which in other respects constitutes an offense under the statute cannot be avoided merely because the child's necessities are relieved or because it is kept from pauperism by the interposition of others, as where it receives support or is kept from actual destitution and want by the efforts of the other parent, the charity of strangers, friends, or relatives, or the bounty of a charitable institution."

The appellant also assigns as error the action of the court in granting the following instruction to the State: "The court instructs the jury for the State that

the crime of child desertion is a continuing offense, and if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Lewis Myrick, did for any length of time between the 16th day of February, 1946, and February, 1948, willfully and feloniously refuse or neglect to provide for the support and maintenance of the children set out in the indictment and left said children in destitute circumstances, then it would be your sworn duty to find him guilty as charged.'' The appellant says that the foregoing instruction omits all reference to the element of desertion as a part of the crime charged. The appellant contends that the court in granting the instruction in effect told the jury that they might convict him upon proof only that he had willfully and feloniously refused or neglected to provide for the support and maintenance of his children, leaving them in destitute circumstances. It is not necessary that we determine whether appellant's criticism of the instruction is a valid criticism or not, for the reason that the defect referred to in the instruction, if indeed the alleged omission constitutes a defect in the instruction, was cured by the granting of other instructions to the State and to the defendant in which the element of desertion as a part of the crime charged was properly included.

Lastly, the appellant assigns as error the action of the court in granting to the State an instruction that ''under the laws of the State of Mississippi a man's wife cannot testify against him in a criminal action other than an assault committed upon her person.'' But we do not think that the appellant is in a position to complain about the granting of that instruction under the circumstances disclosed by the record. Those circumstances were as follows: As the defendant was completing his testimony on direct examination his attorney asked him the following questions and the defendant made the following answers:

"Q. And you tell the Court that you have been willing during all that time since 1946, to provide them with a home, is that correct? A. Yes, sir, that's right.

"Q. Has she refused to move, to live at the home? A. Yes, she has.

"Q. Lewis, your wife hasn't testified in this case, has she? A. No, she hasn't.

"Q. Is she here? A. Yes, she's here." The district attorney, before beginning his cross-examination of the defendant, asked that the jury be permitted to retire, and after the jury had retired asked the defendant the question, "Are you willing for her (that is to say the defendant's wife) to testify and give her version in this case?" The defendant, upon the advice of his attorney, declined to give his consent. The district attorney then asked the court for an instruction to the effect that the wife cannot testify against her husband without his permission. The court answered that the instruction would be given, as requested. The defendant's attorney then said, "I was going to ask for one on it." The instruction was given under the circumstances stated above, and we do not think that the appellant is in any position to complain because of the giving of the instruction.

The question of the appellant's guilt was properly submitted to the jury, and we think that the evidence amply supports the verdict; and we find no errors in the record that would justify a reversal of the judgment of the lower court. The judgment is therefore affirmed.

Affirmed.