## WHITTINGTON *v.* STATE

No. 40148          June 11, 1956          88 So. 2d 115

*Arrington & Arrington,* Hazlehurst, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant, Paul (Pete) Whittington, Sr., was convicted in the Circuit Court of Copiah County of deserting and willfully neglecting and refusing to provide for the support and maintenance of his four children under the age of sixteen years, leaving such children in destitute or necessitous circumstances. Code of 1942, Section 2087. Since the charge was in the conjunctive, and not in the alternative, as permitted by the statute, the State was required to prove each of the three stated elements. Nobles v. State, 77 So. 2d 674, 675 (Miss. 1955); Williams v. State, 207 Miss. 816, 828, 43 So. 2d 389 (1949). Because the offense is a continuing one, evidence of accused's conduct before or after the time charged is admissible to show intent and motive, and as tending to show the commission of the offense charged. Horton v. State, 175 Miss. 687, 166 So. 753 (Miss. 1936).

Appellant married his wife, Mrs. Kate Callendar Whittington, on November 19, 1938. They had four children, who, in July 1953, were under sixteen years of age, two boys being thirteen and twelve years, and the two girls being ten and two years of age at that time. At the time of the trial in November 1955, the oldest boy was sixteen years of age. Appellant and his wife are uneducated white people, capable of doing only manual labor. In July or August 1953, he deserted his wife and four children... They had no income or resources. Prior to that time he had been working as a common laborer, and also for a bootlegger selling whiskey, earning about $25 per week.

Appellant's divorce action was pending against his wife when he left her and the children, but on September 22, 1953, his bill for divorce was dismissed, and on the wife's cross-bill for custody and support of the children, the chancery court awarded their custody to Mrs. Whittington, and ordered appellant to pay her $70 a month, beginning October 1, 1953, for support of the children. Mrs. Whittington testified that she had no other way to earn money to support the children, so she sold whiskey. She was arrested on this charge on August 2, 1954, and was in jail until September 29. Appellant was then in jail charged with willful failure to support his children. He borrowed $250 and paid it to Mrs. Whittington for the children, and apparently the charge then pending against him was dropped. Mrs. Whittington used about $190 of this $250 to pay her fine on the whiskey-selling charge.

Appellant moved to New Orleans in late 1953 or early 1954. He testified that he could not make a living in Copiah County, either selling whiskey or doing anything else. He had four or five different common-labor jobs in New Orleans. He said that he worked about half of the time, but he admitted that he worked for one man four to five months, and for a termite exterminating com-

pany about nine months. He drew unemployment compensation payments for four months. On February 23, 1955, the present indictment was returned by the grand jury. Appellant was arrested and stayed in jail fifty-five days, until he could raise $150 to pay the premium on a bail bond.

After Whittington left his wife and children in July or August 1953 and up until the time of the trial in November 1955, he gave his wife money for the children on the following occasions: $250 in August 1954, as stated above. After the present indictment was returned, appellant by money order sent his wife for the children the following: August 8, 1955, $20; August 20, $20; September 16, $10; September 21, $10; October 7, $10; October 20, $10. Mrs. Whittington said that she thought he had made one other $10 money order payment, which makes a total of $90 paid by appellant by money order, after the indictment was returned. In other words, from the time appellant left his wife and children in July or August 1953 and up to the time of the trial he paid for their support only $340. From the time he left them in July 1953 until the date of his indictment, February 23, 1955, appellant paid for support of his children $250, and he knew that part of that was used to pay his wife's fine for selling whiskey, which she said she did in order to feed the children. So for a period of twenty months prior to the time of the indictment, appellant paid for the support of his four children only $250, or $12.50 a month.

Appellant testified that during this period he sent them cash money all along as he could, which aggregated perhaps $200 to $300. He had no receipts or written evidence to support such alleged payments, and no witness other than himself testified about them. Mrs. Whittington denied that he had sent any such extra cash payments to her for support of the children, and we assume the jury did not believe him.

After appellant left his wife in July 1953, she tried to work at odd jobs, irregularly and as she could. After she was fined for selling whiskey in September 1954, she got a job in a garment factory, earning a small wage averaging about $25 per week, Mrs. Whittington said that she did not do this initially because she had no one to take care of the baby. But later she left the baby with her mother while she worked. The State Department of Public Welfare began on August 3, 1953, making a monthly payment to Mrs. Whittington for support of the children of sums varying from $27 to $35 per month. A kindly relative of appellant permitted Mrs. Whittington and the children to live in a house on her place without paying rent, and in return the Whittington children took care of the owner's yard. Only in these ways have they managed to subsist.

The jury was amply warranted in concluding that appellant deserted and willfully neglected and refused to provide for the support and maintenance of his children, leaving them in destitute or necessitous circumstances. It is undisputed that he is a healthy and physically sound person, and that he was capable of working and earning wages as a common laborer. He admitted that he worked in New Orleans for wages of $30 a week and more for at least a year, yet during the entire period from July 1953 until his indictment in February 1955, he gave his wife for the children only $250, and this was done only when a charge of nonsupport was made against him. The jury no doubt considered his claim that he had a hard time getting a job and that he was out of work about half of the time in New Orleans. But this was inconsistent with his statement that he worked in New Orleans for two employers a total of about one year. All of these matters were questions for the jury. Fortenberry v. State, 86 So. 2d 663 (Miss. 1956); Kelly v. State, 218 Miss. 459, 67 So. 2d 459 (1953); Myrick v.

State, 212 Miss. 702, 55 So. 2d 426 (1951); Williams v. State, 207 Miss. 816, 43 So. 2d 389 (1949).

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Gillespie, JJ.,* concur.